# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CAMDEN VICINAGE

| | |
|---|---|
| CHRISTINE DIMTER, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil No. 18-16233 (RMB) <br><br> **MEMORANDUM OPINION & ORDER** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Christine Dimter from a denial of social security disability benefits.

For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Memorandum Opinion and Order's reasoning.

## I. STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere

1

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work."2 *202 Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot,

3

the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201–02 (3d Cir. 2019).

## II. **FACTS**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.

Plaintiff, who was under 50 years old at the alleged onset date, claims disability, in part, based on impairment of her right hand (her dominant hand) due to radiculopathy / pain radiating from her neck, down through her hand. (A.R. at 23, 55-56) In support of her claim, Plaintiff provided a medical source statement from her treating physician, Dr. Draganescu, which states that Plaintiff can "never" finger or handle with her right or left hand. (A.R. 944-49-- Ex. 24F) Importantly, in support of this assessment, Dr. Draganescu cited the MRI of Plaintiff's cervical spine, taken on October 11, 2013, which revealed "disc protrusions at C4-C5, C5-C6, C6-C7; at C5-C6 moderate to severe [right] foraminal narrowing." (Id.; see

4

also, A.R. 684-- Report of 10/11/2013 MRI Cervical Spine WO-CNT)

## III. ALJ'S DETERMINATION

The ALJ found Plaintiff not disabled. At Step Two of the five-step sequential analysis, the ALJ concluded that Plaintiff's "impairment of the right hand" was non-severe. (A.R. at 23) Despite the non-severe finding, however, the ALJ did make some accommodation for Plaintiff's asserted impairment by limiting handling and feeling to "frequently"-- as opposed to "continuously"-- in the residual functional capacity determination. (A.R. at 24, 27)

The ALJ gave "little weight" to Dr. Draganescu's assessment that Plaintiff could never finger or handle, explaining,

> [T]he degree of severity is not supported by the objective medical evidence of record. There is no evidence to support a conclusion that the claimant . . . can never reach, handle or finger . . . such as was opined by the doctor.
> I also give little weight to Dr. Draganescu's opinion in this questionnaire because she merely checked boxes and circle answers without [sic] little in the way of supporting explanation or remarks. This check-list style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions.

(A.R. at 39-40)

## IV. ANALYSIS

Among other arguments, Plaintiff asserts that the ALJ erred in concluding that Plaintiff's hand impairment was not a severe

5

impairment[1] because the ALJ discounted Plaintiff's treating physician's assessment-- which would have supported a finding of a severe impairment-- for erroneous reasons.  The Court finds that the ALJ's reasons for affording little weight to the treating physician's assessment are not supported by substantial evidence, and therefore the Court will remand for further proceedings consistent with this Memorandum Opinion and Order.

The Third Circuit "ha[s] consistently held that the ALJ must give 'controlling weight' to the opinion of a treating physician unless that opinion is not supported by 'medically acceptable clinical and laboratory diagnostic techniques [or] is . . . inconsistent with the other substantial evidence in . . . [the] record.'" Masher v. Astrue, 354 F. App'x 623, 628 (3d Cir. 2009) (quoting Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001)); 20 C.F.R. § 404.1527(d)(2).  In this case, the ALJ gave less than controlling weight to Dr. Draganescu's assessment because the ALJ found that: (a) there was no objective medical evidence to support the assessment; and (b) Dr. Draganescu

---

[1] "An impairment, once established, must be considered severe unless the evidence demonstrates that it is merely a slight abnormality, having no more than a minimal effect on an individual's ability to work.  Reasonable doubts on severity are to be resolved in favor of the claimant." Sincavage v. Barnhart, 171 F. App'x 924, 926 (3d Cir. 2006) (citing and quoting Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546-47 (3d Cir. 2003)).

6

"merely checked boxes and circled answers without [sic] little in the way of supporting explanation or remarks." (A.R. at 39) Neither (a), nor (b), however, is supported by the record.

With regard to (a), contrary to the ALJ's finding, Dr. Draganescu did cite objective medical evidence to support her assessment. In response to the prompt, "[i]dentify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history and symptoms including pain, etc.) which support your assessment or any limitations," Dr. Draganescu wrote, "MRI cervical spine, 10/11/13, disc protrusions at C4-C5, C5-C6, C6-C7; at C5-C6 moderate to severe [right] foraminal narrowing." (A.R. at 946-- Ex. 24F)

With regard to (b), the Court holds that it was error to discount Dr. Draganescu's assessment based on the form used to provide the assessment. As the document itself plainly indicates, the Social Security Administration's Office of Disability Adjudication and Review approved the form for use in cases seeking disability benefits. (A.R. at 944) The Commissioner cannot provide claimants with a specific form to only later discount the information provided therein based on nothing other than the format of that very form. To hold otherwise would be illogical and fundamentally unfair to disability claimants. The form-- which is seven pages long-- is

a vehicle for presenting potentially voluminous amounts of information in a concise and easily accessible manner.[2] Therefore, even in the absence of the OAR's express approval of the form, the Court would not find that the "check-box" nature of the form, in-and-of itself, is sufficient justification to support departure from the general rule that treating physicians' opinions are typically given controlling weight.[3]

Moreover, contrary to the ALJ's finding, the form contained substantially more than "little" supporting remarks from Dr. Draganescu. It contained an explanation of the results of Plaintiff's cervical spine MRI, including "moderate to severe

---

[2] Notably, the form does not only consist of simple "yes" or "no" questions. With regard to various activities, the form provides a continuum of several possible answers, including "never", "occasionally", "frequently" and "continuously." Similarly, with regard to the length of time a claimant can perform activities such as sitting, standing, and walking, the form provides eight boxes-- one for each hour of an eight-hour working day.

[3] This case is distinguishable from cases in which non-treating, state agency physicians' reports have been discounted for using brief, check-box forms that were not specifically approved by the Social Security Administration. See, e.g., Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (discounting a "check-list-style report" because it "was prepared without the benefit of an examination of [Plaintiff]."); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("the report from the New Jersey Division of Vocational Rehabilitation is but a two-page form, entitled "General Basic Medical Examination," that requires the physician only to check boxes and briefly to fill in blanks. The report does not call for explanations of the examining physician's medical conclusions-- and no such explanations appear.").

8

foraminal narrowing," which Dr. Draganescu provided as support for her conclusions regarding the extent of Plaintiff's right-hand impairments. (A.R. at 946)

Thus, neither of the ALJ's reasons for discounting Dr. Draganescu's assessment of Plaintiff's right hand impairment are supported by the record. However, the Court concludes that remand, as opposed to reversal, is appropriate. As the ALJ's decision discusses, other medical evidence in the record potentially conflicts with Dr. Draganescu's assessment.[4] On remand, the ALJ may revisit her evaluation of Dr. Draganescu's assessment in light of all of the record evidence (including, but certainly not limited to, the October 11, 2013 MRI), weigh it against all other relevant record evidence, and perhaps arrive at the same decision.[5] At this juncture, however, the ALJ must revisit her analysis consistent with the law and record facts discussed herein. As such, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above

---

[4] See, e.g., A.R. at 332-339-- Ex. 4E; A.R. at 493-508-- Ex. 3F; A.R. at 570-586-- Ex. 7F; and A.R. at 618-625-- Ex. 10F.

[5] It is not for this Court to determine, in the first instance, whether other *potentially*-- but not necessarily-- inconsistent record evidence constitutes substantial evidence which would support affording Dr. Draganescu's assessment less than controlling weight. See Masher, 354 F. App'x at 628 (stating that a treating physician's assessment must be given controlling weight unless it is "inconsistent with the other substantial evidence in the record."). Upon remand of this case, the ALJ should conduct this inquiry.

analysis.

**ACCORDINGLY**, it is on this **13th** day of **November, 2019**,

**ORDERED** that the decision of the Administrative Law Judge is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Memorandum Opinion; and it is further

**ORDERED** that the Clerk of Court shall **CLOSE THIS CASE**.

\_\_\_s/ Renée Marie Bumb\_\_\_
RENÉE MARIE BUMB, U.S.D.J.